IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JORGE LOPEZ, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-1110 |
| | § | |
| CONTINENTAL AIRLINES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendant Continental Airlines, Inc.'s Motion for Summary Judgment (Doc. 35) and Plaintiff's Motion to Postpone All Deadlines and Docket Call (Doc. 50).  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Defendant Continental Airlines, Inc.'s motion be **GRANTED**.

If this Memorandum and Recommendation is adopted, Plaintiff's Motion to Postpone All Deadlines and Docket Call should be **DENIED AS MOOT**.

## I.  Case Background

Plaintiff Jorge Lopez ("Plaintiff") filed the present action against Defendant Continental Airlines, Inc. ("Defendant") alleging breach of contract and statutory violations of the Americans with Disabilities Act ("ADA")[2] and the Age Discrimination in Employment

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 42.

[2]    42 U.S.C. §§ 12101-12213.

Act ("ADEA").[3]

## A.  **Procedural History**

Plaintiff filed a charge of disability discrimination with the Texas Workforce Commission Civil Rights Division ("TWC") and the Equal Employment Opportunity Commission ("EEOC") on January 12, 2010.[4]  On or about September 29, 2010, Plaintiff filed a timely action in the Superior Court of New Jersey, Law Division, Union County, alleging the violation of a New Jersey state anti-discrimination law.[5]  Defendant removed the case to federal court on diversity grounds on November 12, 2010.[6]

About six weeks later, on January 3, 2011, Plaintiff amended his complaint, adding causes of action for statutory violations of the ADEA and ADA.[7]  On Defendant's motion, the case was transferred to this court on or about March 25, 2011.[8]  Plaintiff filed his second amended complaint seven weeks later, on May 13, 2011.[9]

---

[3]     29 U.S.C. §§ 621-634.  Although Plaintiff's second amended complaint mentions Section 21.051(1) of the Texas Commission on Human Rights Act ("TCHRA"), it fails to raise any claim pursuant to the TCHRA.  See Doc. 31, Pl.'s 2nd Am. Compl., ¶¶ 1, 4.

[4]     See Doc. 35-14, Ex. N to Def.'s Mot. for Summ. J., TWC Charge.  This TWC charge was also filed with the EEOC.  See id.

[5]     See Doc. 1, Ex. A to Def.'s Notice of Removal, Original Compl.

[6]     See Doc. 1, Def.'s Notice of Removal.

[7]     See Doc. 7, Pl.'s 1st Am. Compl.

[8]     See Doc. 19, Case Transfer from N.J.; Doc. 18, Or. Transferring Case to S. Dist. of Tex.; see also Doc. 13, Def.'s Mot. to Transfer Case; Doc. 16, Pl.'s Resp. in Opp. to Def.'s Mot. to Transfer Case; Doc. 17, Def.'s Reply to Pl.'s Resp. in Opp. to Def.'s Mot. to Transfer Case.

[9]     See Doc. 31, Pl.'s 2nd Am. Compl.; see also Doc. 32, Def.'s Ans. to Pl.'s 2nd Am. Compl.

Six months later, on November 11, 2011, Defendant filed the pending motion for summary judgment, to which Plaintiff responded on November 22, 2011.[10]  Plaintiff filed an amended response to Defendant's pending motion on December 1, 2011, and Defendant replied in support of its motion on December 6, 2011.[11]  Five months later, on May 5, 2012, Plaintiff filed the pending motion to postpone all deadlines and docket call.[12]

## B.   Factual History

Plaintiff was employed as a customer service agent by Defendant from December 7, 1991, through November 17, 2009.[13]  On June 22, 2006, Plaintiff developed a vasospasm, or constriction of the intracranial vessels, and subsequently underwent a craniotomy.[14] During his post-operative exam on October 26, 2006, Plaintiff "appeared to be doing well" and had no headaches or other noted problems.[15]

In 2007, the Transportation Security Administration ("TSA") issued a security directive prohibiting airline employees from

---

[10]    See Doc. 35, Def.'s Mot. for Summ. J.; Doc. 36, Pl.'s Resp. to Def.'s Mot. for Summ. J.

[11]    See Doc. 38, Pl.'s Am. Resp. to Def.'s Mot. for Summ. J.; Doc. 39, Def.'s Reply in Support of Mot. for Summ. J.

[12]    See Doc. 50, Pl.'s Mot. to Postpone All Deadlines & Docket Call.

[13]    See Doc. 31, Pl.'s 2nd Am. Compl., Doc. 35-10, Ex. J to Def.'s Mot. for Summ. J., Termination Letter.

[14]    See Doc. 38, Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., Houston Nw. Med. Ctr. Operation Notes.

[15]    Doc. 38, Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., Dr. Torres Postoperative Exam Notes Dated Oct. 26, 2006.

3

using operational doors while they were off duty.[16]  Defendant thus implemented a strict policy requiring employees who intended to travel as passengers to undergo security screening.[17]  The only exceptions were crew members or mechanics who were "working a particular flight or deadheading to an assignment."[18]  Employees were advised on August 7, 2007, October 4, 2007, and August 12, 2008, that the TSA could "assess fines to individuals of up to $10,000 and [could] fine [Defendant] up to $25,000 for each violation" of this policy.[19]  Signs were posted on or near the operational doors to remind employees not to use the doors if they were off duty.[20]  The signs further warned that failure to abide by the policy could result in termination of employment.[21]

On October 27, 2009, at George Bush Intercontinental Airport ("IAH"), Plaintiff, who intended to travel as a non-revenue passenger and had clocked out of work, went through an operational

---

[16]     See Doc. 35-2, Ex. B to Def.'s Mot. for Summ. J., Christian Nice's Depo., p. 68.

[17]     See Doc. 35-1, Ex. A to Def.'s Mot. for Summ. J., Daily Hub Updates.

[18]     Doc. 35-1, Ex. A to Def.'s Mot. for Summ. J., Daily Hub Updates, pp. 287-88, 290.

[19]     Id.

[20]     See Doc. 35-2, Ex. B to Def.'s Mot. for Summ. J., Christian Nice's Depo., pp. 71-72; Doc. 35-3, Ex. C to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 136-37; see also Doc. 35-4, Ex. D to Def.'s Mot. for Summ. J., Terminal E Operational Door Notice; Doc. 35-5, Ex. E to Def.'s Mot. for Summ. J., Photos of Sign Re: Use of Operational Door.

[21]     See Doc. 35-2, Ex. B to Def.'s Mot. for Summ. J., Christian Nice's Depo., p. 72; Doc. 35-4, Ex. D to Def.'s Mot. for Summ. J., Terminal E Operational Door Notice; Doc. 35-5, Ex. E to Def.'s Mot. for Summ. J., Photos of Sign Re: Use of Operational Door.

door located at Terminal E rather than going through security.[22] Upon being questioned by the security agent posted at the door, Plaintiff affirmed that he was on duty even though he was not.[23]

According to Plaintiff, after he went through the operational door while off duty, he realized that he had made a mistake but did not know how to rectify it.[24] He admitted to Defendant's executives that he made "an involuntary mistake," and he claimed that his aneurysm and cranial surgery caused him to "have a problem with memory" when he multitasked.[25] Defendant determined that Plaintiff's use of the door and failure to go through security when he was off the clock was a direct violation of federal screening regulations and Defendant's policy, and it terminated Plaintiff's employment.[26] Plaintiff appealed the termination through Defendant's grievance process, but the termination was upheld.[27]

After Defendant terminated Plaintiff's employment, Plaintiff scheduled an appointment with his neurosurgeon, Norman J. Torres,

---

[22]    See Doc. 35-3, Ex. C to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 129-30, 137-38.

[23]    See Doc. 35-3, Ex. C to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 138, 195-96.

[24]    See Doc. 35-3, Ex. C to Def.'s Mot. for Summ. J., Pl.'s Depo., p. 136; Doc. 38, Pl.'s Letter to Def. Dated Nov. 28, 2009.

[25]    Doc. 38, Pl.'s Letter to Def. Dated Nov. 28, 2009.

[26]    See Doc. 35-10, Ex. J to Def.'s Mot. for Summ. J., Termination Letter.

[27]    See Doc. 35-11, Ex. K to Def.'s Mot. for Summ. J., Req. for Appeal Forms.

M.D., ("Dr. Torres").[28]   Plaintiff told Dr. Torres about the incident at IAH and reported that since his surgery, he had developed "very fleeting episodes of forgetfulness when multiple tasks were presented."[29]   Dr. Torres noted that "this is not unexpected as [Plaintiff] sustained bleeding in his brain and required surgery in 2006."[30]  Nevertheless, Dr. Torres stated that Plaintiff's forgetfulness "does not preclude him from working."[31]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could

---

[28]   See Doc. 38, Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., Letter from Dr. Torres.

[29]   Id.

[30]   Id.

[31]   Doc. 38, Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., Note from Dr. Torres.

resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore

<u>v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

### III.  Analysis

Defendant moves for summary judgment on all of Plaintiff's claims. Specifically, Defendant argues that the court should enter judgment in its favor on Plaintiff's ADEA claim because Plaintiff failed to exhaust his administrative remedies by not filing a charge of age discrimination with the TWC or the EEOC. Defendant next contends that Plaintiff's ADA claim also fails as a matter of law because: (1) Plaintiff does not have a disability as defined in the ADA; (2) Plaintiff cannot show that other similarly situated employees were treated differently; (3) Defendant had a legitimate nondiscriminatory reason for terminating Plaintiff's employment;

8

and (4) Plaintiff cannot show that Continental's reason was
pretextual and the real reason for termination was discriminatory.
With respect to Plaintiff's breach of contract claim, Defendant
argues that the court should grant summary judgment in its favor
because Plaintiff did not have an employment contract with
Defendant.  The court considers the merits of Defendant's motion.

**A.  <u>ADEA Claim</u>**

The ADEA makes it "unlawful for an employer . . . to discharge
any individual...because of such individual's age."  29 U.S.C. §
623(a)(1).  A plaintiff with an ADEA claim must exhaust
administrative remedies before pursuing those claims in federal
court.  <u>Julian v. City of Houston, Tex.</u>, 314 F.3d 721, 725 (5th Cir.
2002).  In Texas, plaintiffs have 300 days from the date of the
unlawful practice to file a charge of discrimination with the EEOC
or they "lose the ability to recover for it."  <u>Nat'l RR Passenger
Corp. (AMTRAK) v. Morgan</u>, 536 U.S. 101, 114 (2002); 42 U.S.C. §
2000e-5(e)(1).  Any challenged employment action that occurred
prior to 300 days before a plaintiff's EEOC charge is time barred.
<u>Frank v. Xerox</u>, 347 F.3d 130, 136 (5th Cir. 2003).  A complaint
alleging age discrimination  that is not preceded by the filing of
an administrative charge alleging the same should be dismissed on
the ground that administrative remedies were not exhausted.  <u>See
Spears v. DSM Copolymer, Inc.</u>, 103 F.3d 124, at *1 (5th Cir. 1996).

Here, Defendant contends that Plaintiff's age discrimination

claim must be dismissed because he did not file a claim for age discrimination with the EEOC.   The discrimination charge form before the court contained boxes that could have been checked to indicate the type of discrimination the complainant was alleging.[32] The available boxes were "race," "color," "sex," "religion," "national origin," "retaliation," "age," "disability," "genetic information," and "other."[33]  Plaintiff checked only "disability."[34] The statement provided his dates of service with Defendant, discussed how he "mistakenly used the operational door" in violation of federal security screening regulations and Defendant's policies, stated that this mistake was due to his disability which caused periodic forgetfulness, and noted that another employee who violated the same policy was not terminated.[35]   Lopez concluded his charge with the following statement: "I believe that I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act (ADA)."[36]

Although Plaintiff reported his date of birth as identifying information, he made no mention of his age or its alleged role in his termination on the form.[37]  Plaintiff's filings with this court

---

[32]    See Doc. 35-14, Ex. N to Def.'s Mot. for Summ. J., TWC Charge.

[33]    Id.

[34]    See id.

[35]    Id.

[36]    Id.

[37]    See id.

are similarly silent regarding age discrimination, with the exception of Plaintiff's indicating age discrimination—supported by neither factual allegations nor competent summary judgment evidence—as one of three alleged violations committed by Defendant in terminating Plaintiff.[38]  The court finds that there is nothing on Plaintiff's charge form that would reasonably apprise an EEOC investigator that Plaintiff was alleging age discrimination. Plaintiff thus did not exhaust his administrative remedies with regard to his ADEA claim.

The court therefore **RECOMMENDS** that Defendant's motion for summary judgment with regard to Plaintiff's ADEA claim be **GRANTED**.

**B.  ADA Claim**

The ADA prohibits a covered employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C.A. § 12112(a).  The ADA also prohibits employers from retaliating against employees who oppose acts that are unlawful under the ADA and from interfering with the exercise of rights or protections granted by the ADA.  42 U.S.C. § 12203.

In the absence of direct evidence of discrimination, ADA claims are analyzed under the burden-shifting scheme first

---

[38]    See Doc. 36, Pl.'s Resp. to Def.'s Mot. for Summ. J., p. 1.

articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792
(1973), and modified by <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90
(2003). <u>See</u> <u>Gowesky v. Singing River Hosp. Sys.</u>, 321 F.3d 503, 511
(5th Cir.), <u>cert. denied</u>, 540 U.S. 815 (2003); <u>Daigle v. Liberty
Life Ins. Co.</u>, 70 F.3d 394, 396 (5th Cir. 1995).

Under this burden-shifting scheme, the plaintiff must first
make out a prima facie case of discrimination. <u>Gowesky</u>, 321 F.3d
at 511; <u>Daigle</u>, 70 F.3d at 396. In response, the defendant must
articulate a legitimate, nondiscriminatory reason for the action
that adversely affected the employee. <u>Gowesky</u>, 321 F.3d at 511;
<u>Daigle</u>, 70 F.3d at 396. If the employer offers some evidence to
support the stated nondiscriminatory reasons for discharge, the
plaintiff must offer evidence of pretext or mixed motives.
<u>Gowesky</u>, 321 F.3d at 511; <u>McInnis v. Alamo Community College Dist.</u>,
207 F.3d 276, 279 (5th Cir. 2000).

In order to establish a prima facie case of disability
discrimination under the ADA, the plaintiff must first show that
he: (1) has a disability; (2) is qualified for the job in question;
and (3) experienced an adverse employment decision due to his
disability. <u>See</u> <u>Rodriguez v. ConAgra Grocery Products Co.</u>, 436
F.3d 468, 474 (5th Cir. 2006); <u>Hamilton v. Sw. Bell Tel. Co.</u>, 136
F.3d 1047, 1050 (5th Cir. 1998). The ADA defines disability as "(A)
a physical or mental impairment that substantially limits one or
more major life activities of [the employee]; (B) a record of such

an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(1); see Rodriquez, 436 F.3d at 474; Hamilton 136 F.3d at 1050.

Plaintiff's ADA claim is based on the allegation that Defendant discriminated against him because of "periodic episodes of forgetfulness" he experienced as a result of a craniotomy he underwent on June 22, 2006, to repair a hemorrhage from a ruptured aneurysm.[39]  Defendant argues that Plaintiff cannot establish the threshold element of his prima facie case—that he was disabled or perceived as disabled under the ADA.  In the alternative, Defendant contends that even if Plaintiff can establish a prima facie case, Plaintiff cannot show that Defendant's legitimate, non-discriminatory reason for terminating Plaintiff was pretextual. The court addresses both arguments.

## 1.  Plaintiff Is Not Disabled

For purposes of this analysis, the court assumes that Plaintiff's alleged disability, periodic forgetfulness caused by surgery, constitutes a physical impairment under the ADA.  However, an impairment must substantially limit at least one major life activity in order to qualify as a disability for purposes of the ADA.  See 42 U.S.C. 12102(1)(A).  Major life activities under the ADA "include, but are not limited to, caring for oneself,

---

[39]     Doc. 31, Pl.'s 2nd Am. Compl., ¶ 7; see Doc. 35-3, Ex. C to Def.'s Mot. for Summ. J., Pl.'s Depo., p. 227.

performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. 12102(2)(A). An individual is substantially limited if he is "unable to perform a major life activity that the average person in the general population can perform, or [is] significantly restricted in the ability to perform it." E.E.O.C. v. Chevron Phillips Chem. Co., 570 F.3d 606, 614 (5th Cir. 2009)(citing 29 C.F.R. § 1630.2(j)(3)).

"Whether an impairment substantially limits a major life activity is determined by considering (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact." Pryor v. Trane Co., 138 F.3d 1024, 1026 (5th Cir. 1998); see also 29 C.F.R. § 1630.2(j)(2). The determination must be made "without regard to the ameliorative effects of mitigating measures," including medication. 42 U.S.C. 12102(4)(E)(i)(I). In order for working to be considered the major life activity that is substantially limited, the individual must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3).

Here, Plaintiff's alleged disability consists of episodes of

14

forgetfulness during multitasking caused by cranial surgery Plaintiff underwent in 2006. As discussed below, although Plaintiff's alleged memory problems could be deemed to impact some of the major life activities outlined in the ADA, such as concentrating and thinking, there is no competent summary judgment evidence that these activities were "substantially limited" or "significantly restricted." See 42 U.S.C. 12102(1)(A).

The evidence before the court showed that, in October 2006, approximately four months following the craniotomy, a neuropsychologist evaluated Plaintiff and determined that he had "experienced minimal difficulties with attention and concentration, as well as with memory. Onset of these symptoms began following the event and have progressively improved. . . . He denies significant difficulties performing activities of daily living independently . . . ."[40]

In December 2009, over three years after the surgery and less than a month following Plaintiff's termination, Plaintiff reported to Dr. Torres that he experienced moments of forgetfulness when multitasking.[41] Dr. Torres noted that "slight forgetfulness on multi-tasking . . . is not uncommon in [Plaintiff's] cranial condition," and that it did "not preclude [Plaintiff] from

---

[40]    Doc. 35-13, Ex. M to Def.'s Mot. for Summ. J., Neuropsychological Eval.

[41]    See Doc. 38, Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., Letter from Dr. Torres.

working."[42] In a letter written six days later, Dr. Torres again noted that Plaintiff's reports of "very fleeting episodes of forgetfulness when multiple tasks were presented" were "not unexpected" given Plaintiff's surgery in 2006.[43]

The court finds that, although Plaintiff may have suffered some memory issues due to his surgery, there is no competent summary judgment evidence to support a finding that Plaintiff's impairment substantially limited any major life activity, much less that of working.

Because Plaintiff has not produced any competent summary judgment evidence that his alleged disability substantially limited a major life activity, Plaintiff cannot establish a prima facie claim that he is disabled under the ADA.   The court refuses to speculate on the limiting effects that Plaintiff's periodic forgetfulness may have on any major life activity, and, therefore, Plaintiff's ADA claim should be dismissed on summary judgment.

### 2.  Plaintiff Has Not Established Pretext

Defendant argues in the alternative that, assuming Plaintiff can establish his prima facie case, he nonetheless cannot produce evidence that Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff was a pretext for unlawful discrimination.

---

[42]   Doc. 38, Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., Note From Dr. Torres.

[43]   Doc. 38, Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., Letter From Dr. Torres.

Defendant asserts that it terminated Plaintiff because, intending to travel as a non-revenue passenger, Plaintiff violated federal screening regulations and company policy when he proceeded through an operational door while off duty, thereby bypassing airport security.[44]

Plaintiff admitted at his deposition that he proceeded through the operational door while he was off duty and he knew that such conduct was not permitted by Defendant's policies.[45] Plaintiff's reports to Defendant during an investigation of his conduct further support his deposition admissions.[46] Moreover, Defendant has produced competent summary judgment evidence in affidavit form that fourteen named individuals, including Plaintiff, have been "caught using operational doors at IAH while not on duty."[47] Each of these individuals, the affidavit stated, was terminated and not reinstated by Defendant at any time.[48]

The court notes that, at his deposition and in his responses

---

[44]    See Doc. 35, Def.'s Mot. for Summ. J., p. 1.

[45]    See Doc. 35-3, Ex. C to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 130, 136.

[46]    See Doc. 35-8, Ex. H to Def.'s Mot. for Summ. J., Corp. Sec. Pre-Interview Questionnaire; Doc. 35-11, Ex. K to Def.'s Mot. for Summ. J., Letter from Pl. Dated Nov. 28, 2009.

[47]    Doc. 35-12, Ex. L to Def.'s Mot. for Summ. J., Aff. of Scott Moga, ¶ 2.

[48]    Doc. 35-12, Ex. L to Def.'s Mot. for Summ. J., Aff. of Scott Moga, ¶ 3.  As the court understands Plaintiff's filing of June 6, 2012, Plaintiff objects to Scott Moga's affidavit as presented in bad faith or for the purpose of delay.  See Doc.52, Pl.'s Objs. Dated June 6, 2012.  The court finds, and Plaintiff presents, nothing to support this objection.  Therefore, the court **OVERRULES** Plaintiff's objection.

to Defendant's motion, Plaintiff recited a number of instances in which other employees allegedly violated Defendant's policy by going through operational doors while off duty, but were not terminated or were terminated and later reinstated.[49] Plaintiff's testimony revealed, however, that he knew the name of only one of the aforementioned employees, and had no personal knowledge of any of the alleged infractions, but rather learned of them from other employees.[50] As Plaintiff's statements consist of inadmissible hearsay and are lacking in personal knowledge, they do not constitute competent summary judgment evidence that the court may consider in ruling on Defendant's motion. See Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 192 (5th Cir. 1991); Fed. R. Civ. P. 56; Fed. R. Evid. 602, 801.

Accordingly, in the absence of competent summary judgment evidence raising a question of fact as to the legitimacy of Defendant's articulated reason for terminating Plaintiff, the court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED** on Plaintiff's ADA claim.

---

[49] See Doc. 35-3, Ex. C to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 98-105; Doc. 36, Pl.'s Resp. to Def.'s Mot. for Summ. J.; Doc. 38, Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., pp. 4-6.

[50] See Doc. 35-3, Ex. C to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 98-105. In his amended response to Defendant's motion, Plaintiff named a number of individuals who purportedly proceeded through an operational door while off duty, but were not terminated or were terminated and later reinstated. See Doc. 38, Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., pp. 4-6. However, Plaintiff must go beyond mere conclusory allegations at this stage of the proceedings in order to survive summary judgment. See Brown, 337 F.3d at 541; Ramsey, 286 F.3d at 269. Because Plaintiff has not presented any competent summary judgment evidence to support his conclusory allegations, the court may not consider them in resolving Defendant's motion.

C.   __Breach of Contract Claim__

     Defendant moves for summary judgment on Plaintiff's breach of contract claim on the ground that, because Plaintiff was employed at will, he cannot establish the requisite elements of a breach of contract claim.

     In Texas, a plaintiff alleging breach of contract must show that: 1) a valid contract exists; 2) the plaintiff fully performed his obligations; 3) the defendant breached the contract; and 4) the plaintiff was damaged as a result of the breach.  Hovorka v. Cmty. Health Sys., Inc., 262 S.W.3d 503, 508-09 (Tex. App.--El Paso 2008, no pet.).  As Texas is an employment-at-will state, a terminated employee seeking damages for breach of contract first must establish the existence of an express agreement limiting an employer's right to end the employment relationship.  See Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 1998).  "For such a contract to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances."  Montgomery County Hosp. Dist., 965 S.W.2d at 502.

     Here, Defendant directs the court to Section 1.A of Defendant's "Fly-to-Win Handbook," which stated that "Team members are employed at will."[51]   Further, Plaintiff conceded in his

---

[51]   See Doc. 35-15, Ex. O to Def.'s Mot. for Summ. J., Fly-to-Win Handbook Excerpt.

deposition that he was an at-will employee and did not have an employment contract prohibiting termination without good cause.[52] Plaintiff alleged in his second amended complaint that his "legitimate expectation that any anti-discrimination policy of Defendant would be enforced . . . rose to a contractual relationship," the breach of which occurred when Defendant terminated Plaintiff in violation of its anti-discrimination policies.[53]  Plaintiff has cited no case law in support of his position and has failed to produce any competent summary judgment evidence of the existence of an enforceable employment contract between Plaintiff and Defendant.   The court thus finds that Plaintiff has failed to raise a question of fact as to his at-will employment status.

In the absence of competent summary judgment evidence rebutting Defendant's evidence that Plaintiff was employed at will, the court **RECOMMENDS** that summary judgment be **GRANTED** in Defendant's favor on Plaintiff's breach of contract claim.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED**.

If this Memorandum and Recommendation is adopted, Plaintiff's

---

[52]    See Doc. 35-3, Ex. C to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 154-55.

[53]    Doc. 31, Pl.'s 2nd Am. Compl., ¶¶ 22-23.

20

Motion to Postpone All Deadlines and Docket Call should be **DENIED AS MOOT.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 13th day of June, 2012.

Nancy K. Johnson
United States Magistrate Judge

21